JOHN L. BURRIS, Esq., (SBN 69888)
LATEEF H. GRAY, Esq., (SBN 250055)
JAMES COOK Esq., (SBN 300212)
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Center
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
john.burris@johnburrislaw.com
lateef.gray@johnburrislaw.com
james.cook@johnburrislaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO PALIKIKO-GARCIA, an individual; STANLEY HARRIS, an individual; and KEITH DWAYNE RICHARDSON, an individual, | Case No.: |
| | COMPLAINT FOR DAMAGES (42 U.S.C §§ 1983; and pendant tort claims) |
| Plaintiffs, | |
| v. | JURY TRIAL DEMANDED |
| CITY AND COUNTY OF SAN FRANCISCO; SHERIFF ROSS MIRKARIMI, in his capacity as SHERIFF for the CITY AND COUNTY OF SAN FRANCISCO SHERIFF'S DEPARTMENT; DEPUTY SCOTT NEU, individually and in his capacity as DEPUTY for the CITY AND COUNTY OF SAN FRANCISCO SHERIFF'S DEPARTMENT; DEPUTY EVAN STAEHELY, individually and in his capacity as DEPUTY for the CITY AND COUNTY OF SAN FRANCISCO SHERIFF'S DEPARTMENT; DEPUTY EUGENE JONES, individually and in his official capacity as DEPUTY for the CITY AND COUNTY OF SAN FRANCISCO; DEPUTY CLIFFORD CHIBA, individually | |

1  and in his official capacity as DEPUTY for
the CITY AND COUNTY OF SAN
2  FRANCISCO; DOES 1-25, inclusive,

3              Defendants.

4

5                        **INTRODUCTION**

6       1.     This is an action for damages brought pursuant Title 42 U.S.C. §§

7  1983 and 1988, and the Fourth, Eighth and Fourteenth Amendments to the

8  United States Constitution, under California Civil Code Section § 52.1 and §

9  51.7, and under the common law of California.  This action is against SHERIFF

10 ROSS MIRKARIMI, DEPUTY SCOTT NEU, DEPUTY EVAN STAEHELY,

11 DEPUTY EUGENE JONES, DEPUTY CLIFFORD CHIBA of the SAN

12 FRANCISCO SHERIFF'S DEPARTMENT, and DOES 1-25.

13      2.     It is also alleged that these violations and torts were committed

14 during the course and scope of the above-mentioned officers' employment with

15 the CITY AND COUNTY OF SAN FRANCISCO SHERIFF'S DEPARTMENT.

16                        **JURISDICTION**

17      3.     This action arises under Title 42 of the United States Code, Section

18 1983. Title 28 of the United States Code, Section 1331 and 1343 confers

19 jurisdiction upon this Court.  The unlawful acts and practices alleged herein

20 occurred in the City of San Francisco, San Francisco County, California, which is

21 within the judicial district of this Court.

22                        **PARTIES**

23      4.     At all times mentioned herein, RICARDO PALIKIKO-GARCIA

24 (hereinafter "PALIKIKO-GARCIA"), has been and is a resident of the state of

25 California and is a United States Citizen.

26      5.     At all times mentioned herein, STANLEY HARRIS (hereinafter

27 "HARRIS"), has been and is a resident of the state of California and is a United

28

                                                                        2

States Citizen.

6.     At all times mentioned herein, KEITH DWAYNE RICHARDSON (hereinafter "RICHARDSON"), has been and is a resident of state of California and is a United States Citizen.

7.     At all times mentioned herein, Defendant, ROSS MIRKARIMI, (hereinafter "MIRKARIMI"), was the Sheriff and elected official of the CITY AND COUNTY OF SAN FRANCISCO, and is sued individually and in his official capacity. Plaintiffs allege on information and belief that Sheriff MIRKARIMI is legally and ethically responsible for supervising and managing the jails in the City and County of San Francisco and, in that capacity, is responsible for protecting the health and safety of both inmates and staff. Sheriff MIRKARIMI and his sworn staff, while acting under the color of law, have taken an oath to uphold the Constitution of the United States.

8.     At all times mentioned herein, Defendant, SCOTT NEU, (hereinafter "NEU"), was a deputy sheriff for the CITY AND COUNTY OF SAN FRANCISCO SHERIFF'S DEPARTMENT, and is sued individually and in his official capacity.

9.     At all times mentioned herein, Defendant, EVAN STAEHELY, (hereinafter "STAEHELY"), was a deputy sheriff for the CITY AND COUNTY OF SAN FRANCISCO SHERIFF'S DEPARTMENT, and is sued individually and in his official capacity.

10.     At all times mentioned herein, Defendant, EUGENE JONES, (hereinafter "JONES"), was a deputy sheriff of the CITY AND COUNTY OF SAN FRANCISCO SHERIFF'S DEPARTMENT, and is sued individually and in his official capacity.

11.     At all times mentioned herein, Defendant, CLIFFORD CHIBA, (hereinafter "CHIBA"), was a deputy of the CITY AND COUNTY OF SAN

FRANCISCO SHERIFF'S DEPARTMENT, and is sued individually and in his official capacity.

12.     At all times mentioned herein, Defendant DOES 1 through 25 were employees of the City and County of San Francisco and members of the Sheriff's Department.  Plaintiffs allege on information and belief that DOES 1 through 25 were the Watch Commander and/or the highest-ranking person in command during the events alleged herein.  In that capacity, DOES 1 through 25 directly and intentionally authorized, encouraged, and personally participated in the egregious Constitutional violations alleged herein.

13.     Plaintiffs allege that the CITY AND COUNTY OF SAN FRANCISCO SHERIFF'S DEPARTMENT is a governmental entity subject to suit pursuant to 42 U.S.C. § 1983 and <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658 (1978).

14.     Defendants named as DOE were at all times mentioned herein employed by defendant CITY AND COUNTY OF SAN FRANCISCO SHERIFF'S DEPARTMENT and are sued in their official capacities as sheriff deputies for defendant and as individuals acting in a personal capacity.  In engaging in the conduct described herein, while said defendants acted under the color of law in the course and scope of their employment, they exceeded the authority vested in them by the United States Constitution and the CITY AND COUNTY OF SAN FRANCISCO SHERIFF'S DEPARTMENT.

15.     Plaintiffs are ignorant of the names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein, as DOES 1 through 25, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe and thereon alleges that each of the fictitiously named defendants is responsible in some

manner for the occurrences herein alleged, and that Plaintiffs' damages herein alleged were proximately caused by such Defendants.

16.     In doing the acts alleged herein, Defendants, and each of them, acted within the course and scope of their employment for THE CITY AND COUNTY OF SAN FRANCISCO.

17.     In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of law.

18.     Due to the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

## FACTUAL ALLEGATIONS

### Ricardo Palikiko-Garcia

19.     On or about January 15, 2015, Plaintiff PALIKIKO-GARCIA was booked into San Francisco County Jail #4 located at 850 Bryant Street, San Francisco 94103.   Shortly thereafter, Plaintiff PALAKIKO-GARCIA was assigned to work in the jail's kitchen.

20.     Immediately thereafter, Plaintiff PALIKIKO-GARCIA came under the scrutiny of Defendant NEU.  Defendant NEU routinely called Plaintiff PALIKIKO-GARCIA, "little guy."  One day, Defendant NEU noticed Plaintiff PALIKIKO-GARCIA carrying a bag that contained two eggs.  Defendant NEU made Plaintiff PALIKIKO-GARCIA gamble for his eggs.  Defendant NEU pulled out a deck of cards on the desk outside L1 and insisted that Plaintiff PALIKIKO-GARCIA pick one in a game of "high-low".  Begrudgingly, Plaintiff PALIKIKO-GARCIA participated and won.  However, Defendant NEU took the eggs anyway.  Defendant NEU continued to make Plaintiff PALIKIKO-GARCIA gamble with him throughout Plaintiff PALIKIKO-GARCIA's stay in the county jail.

21.     Plaintiff PALIKIKO-GARCIA quickly noticed an unusual relationship between Defendant NEU and a fellow inmate, Plaintiff HARRIS. Defendant NEU routinely interrupted their daily kitchen routine by instructing Plaintiff HARRIS to do push-ups and other exercises in front of Plaintiff PALIKIKO-GARCIA and other inmates. Further, Defendant NEU would stand over Plaintiff HARRIS, exhorting and insulting him as Plaintiff HARRIS grunted and groaned through the exercises.  Defendant NEU constantly addressed Plaintiff HARRIS as "fat boy" and referred to him as his "fighter", whom he was "training."  Defendant NEU would remove Plaintiff HARRIS from the kitchen and make him do exercises in a small area past L3.

22.     At one point, Defendant NEU approached Plaintiff PALIKIKO-GARCIA and said words to the effect of, "What's up little man? You want to see my champion?"  Plaintiff PALIKIKO-GARCIA, out of fear of Defendant NEU, agreed to see Defendant NEU's "Champion", despite his confusion and lack of understanding about Defendant NEU's intentions.  Defendant NEU then ordered Plaintiff PALIKIKO-GARCIA and Plaintiff HARRIS to walk down the hallway past the L dorms, near the room that contained a dip bar.  This area was not visible to security cameras or other individuals who might be passing by.  Defendant CLIFFORD CHIBA was also present in the area.

23.     Defendant NEU immediately instructed Plaintiff PALIKIKO-GARCIA and Plaintiff HARRIS to face each other.  Defendant NEU then told Plaintiff PALIKIKO-GARCIA and Plaintiff HARRIS that they were going to fight each other.  Defendant NEU went on to explain the rules of engagement. Defendant NEU stated that they could not seek medical attention after the fight. Defendant NEU instructed Plaintiff PALIKIKO-GARCIA and Plaintiff HARRIS not to strike each other in the face.  Defendant NEU further instructed the two inmates that, "If either of you gets injured, you are to say that you fell out of the bunk beds." After listening to Defendant NEU's instructions,

Plaintiff PALIKIKO-GARCIA responded that he was not interested in fighting Plaintiff HARRIS, that he had no ill will towards Plaintiff HARRIS and that he preferred to go back to work.  In response, Defendant NEU angrily threatened to "cuff and fuck him up", a threat Plaintiff PALIKIKO-GARCIA believed Defendant NEU would carry out.  Defendant NEU followed the threat by telling Plaintiff PALIKIKO-GARCIA and Plaintiff HARRIS that they would be "rolled up" and lose their kitchen jobs if they revealed what happened to medical personnel.  Specifically, Defendant NEU said, "I'll also put you on the mainline and send you to San Bruno."  Defendant NEU then offered a consolation by promising the winner of the fight a cheeseburger.

24.     Plaintiff PALIKIKO-GARCIA pleaded with Defendant NEU not to make him fight.  Defendant NEU gave Plaintiff PALIKIKO-GARCIA no choice.  The ensuing fight between Plaintiff PALIKIKO-GARCIA and Plaintiff HARRIS lasted for approximately three minutes.  Plaintiff PALIKIKO-GARCIA and Plaintiff HARRIS started out grappling as Defendant NEU and Defendant CHIBA egged them on, but the fight quickly escalated with neither combatant holding back.  Neither combatant threw punches to the head.  However, they did throw elbows.  During the fight, Plaintiff PALIKIKO-GARICA and Plaintiff HARRIS fell to the ground.  As Plaintiff HARRIS became exhausted, Plaintiff PALIKIKO-GARCIA placed Plaintiff HARRIS in a headlock.  Plaintiff PALIKIKO-GARCIA's headlock forced Plaintiff HARRIS to "tap out", which ended the fight.   Plaintiff PALIKIKO-GARCIA stood up and requested that he be allowed to return to work.  Defendant NEU angrily berated Plaintiff HARRIS by saying words to the effect of, "Motherfucker, I don't like losing money!"  Defendant NEU then told Plaintiff PALIKIKO-GARCIA and Plaintiff HARRIS that they were going to fight again in exactly one week.

25.     Shortly thereafter, Defendant CHIBA escorted Plaintiff HARRIS and Plaintiff PALIKIKO-GARCIA back to the kitchen.  Defendant CHIBA then asked Plaintiff PALIKIKO-GARCIA to demonstrate the move that he performed on Plaintiff HARRIS.

26.     The next day, Defendant EUGENE JONES approached Plaintiff PALIKIKO-GARCIA, wanting him to fight again because he had "missed" the first match.  Plaintiff PALIKIKO-GARCIA informed Defendant JONES that he no interest in fighting anyone as he had no problems with anyone and he had gotten hurt and needed time for his body to recover.  However, Defendant JONES insisted, saying words to the effect of, "I'm counting on you, are you ready?"  Plaintiff PALIKIKO-GARCIA, in an attempt to postpone the pending fight, offered to Defendant JONES his injuries from the previous fight as a plea.  Plaintiff PALIKIKO-GARCIA also complained to Defendant JONES that Defendant NEU had not given him the cheeseburger that he had promised the winner of the first fight.  Plaintiff PALIKIKO-GARCIA feared that he would be forced to fight again as he knew that Defendant NEU was upset about Plaintiff HARRIS "losing" the first fight.

27.     Some days later, Plaintiff PALIKIKO-GARCIA was in the kitchen when Defendant JONES told him that, "NEU has your hamburger, c'mon." Plaintiff PALIKIKO-GARCIA was determined not to fight again. Without regard, Defendant NEU appeared in the kitchen and screamed, "fight or I'll fuck you up!"  Plaintiff PALIKIKO-GARCIA was afraid that Defendant NEU would follow through with this threat, so he walked back to the fight area. Defendant JONES and Defendant EVAN STAEHELY were present at the fight area.

28.     Plaintiff PALIKIKO-GARCIA and Plaintiff HARRIS were again instructed that, "anything goes" except for punching in the face.  Plaintiff PALIKIKO-GARCIA and Plaintiff HARRIS fought hard again.  At one point,

Plaintiff HARRIS punched Plaintiff PALIKIKO-GARCIA in the scrotum. Plaintiff PALIKIKO-GARCIA collapsed in pain and requested a time out. Defendants NUE, JONES, and STAEHELY denied Plaintiff PALIKIKO-GARCIA's request for a timeout and the fight immediately continued.  Plaintiff PALIKIKO-GARCIA struggled to breathe after Plaintiff HARRIS managed to get on top of him. At the time, Plaintiff PALIKIKO-GARCIA saw that two other deputies, Deputy Crystal Collins and Deputy Francisco Aquino, had run down the hall toward the fight. However, Deputies Collins and Aquino retreated after Deputy JONES waved them off.

29.     The fight continued for a short time until Defendant NEU got scared and stopped it because he did not know if Deputies Collins and Aquino were going to "say something."  After the fight, Plaintiff PALIKIKO-GARCIA and Plaintiff HARRIS were sent back to the kitchen.  Plaintiff PALIKIKO-GARCIA could not perform his duties due to the injuries that he suffered to his ribs, shoulder and groin.

30.     Several days later, Plaintiff PALIKIKO-GARCIA made a medical complaint when Defendants NEU, JONES, STAEHELY were not on duty. A member of the Jail Medical staff visited Plaintiff PALIKIKO-GARCIA and instructed him to lift up his shirt.  Plaintiff PALIKIKO-GARCIA told this person that he believed that he had a cracked rib because he was having difficulty moving his right arm and getting out of bed.  This person from Jail Medical told Plaintiff PALIKIKO-GARCIA that because of the symptoms he had described, he would no longer be allowed to work in the kitchen.  Out of fear of being sent to the mainline, Plaintiff PALIKIKO-GARCIA withdrew his complaint.  Plaintiff PALIKIKO-GARCIA had pain for several months when he breathed.

31.     On several occasions, Defendant NEU threatened Plaintiff PALIKIKO-GARCIA that he would "fuck him up", asking him if he has "ever

been handcuffed, maced and had your ass beat?"  Plaintiff PALIKIKO-GARCIA reported an incident on March 25, 2015, during which Defendant NEU pushed food from his tray onto the floor.

32.     Plaintiff PALIKIKO-GARCIA still fears for his safety and well-being because these sheriff's deputies are law enforcement and have far reaching powers.  Plaintiff PALIKIKO-GARCIA believes that these sheriff's deputies can do whatever they want to him with impunity.  Moreover, Defendant NEU is sadistic and generally scared Plaintiff PALIKIKO-GARCIA. Plaintiff PALIKIKO-GARCIA thinks about the things that these members of the San Francisco Sheriff's Department did to him every day.

### Stanley Harris

33.     Plaintiff HARRIS witnessed Defendant NEU harass inmates from 2010 to 2012.  Beginning in 2012, Defendant NEU would take food from Plaintiff HARRIS and make him gamble (e.g. play dice or cards) or workout (e.g. do pushups) to get his food back. On his release day in 2012, Defendant NEU called Plaintiff HARRIS's name and told Plaintiff HARRIS that he had to do 50 pushups to get out the gate.  It took Plaintiff HARRIS about an hour to complete the 50 pushups and it caused him extreme embarrassment and fear. Ever since that time, seemingly every time Defendant NEU saw Plaintiff HARRIS he went out of his way to antagonize and strike fear into him.

34.     During Plaintiff HARRIS's most recent stint in jail, on numerous occasions, Defendant NEU grabbed food from Plaintiff HARRIS and threw it to nearby inmates.  On these occasions, Defendant NEU proclaimed that Plaintiff HARRIS was already fat enough and should not be eating any more food. Defendant NEU forced Plaintiff HARRIS to do exercises, i.e. 50 pushups, and threatened to "fuck" Plaintiff HARRIS up or roll him up and send him to the "mainline with the killers" if he did not complete the exercises to the

1   Defendant's satisfaction.  On one occasion, Defendant NEU threatened to

2   handcuff Plaintiff HARRIS and take him to a room, where three awaiting

3   Deputies would beat him.  Defendant NEU instructed Plaintiff HARRIS to say

4   that he was going to a legal visit.

5        35.    Defendant NEU routinely interrupted Plaintiff HARRIS's kitchen

6   routine by making him do push-ups and other exercises in front of the other

7   inmates.  Defendant NEU would stand over Plaintiff HARRIS exhorting him

8   and insulting him as Plaintiff HARRIS grunted and groaned through the

9   exercises.  Defendant NEU constantly addressed Plaintiff HARRIS as "fat boy"

10   and referred to him as his "fighter" who he was "training."  At times,

11   Defendant NEU would remove Plaintiff HARRIS from the kitchen and make

12   him do exercises in a small area past L3.  These forced workouts happened

13   frequently and were unannounced.  Plaintiff HARRIS was in constant fear of

14   Defendant NEU because he never knew when Defendant NEU would appear

    and subject him to abuse.

15        36.    In March 2015, Defendant NEU challenged Plaintiff HARRIS to a

16   fight and insisted that they "go a round" against each other.  Defendant NEU

17   then removed all his work gear and shirt and challenged and threatened

18   Plaintiff HARRIS, saying that he would make Plaintiff HARRIS "tap out."

19   Plaintiff HARRIS believes that Defendant NEU's motives may have been

20   sexual as Defendant NEU often threatened to "take his cheeks", a reference to

21   having forced anal intercourse with Plaintiff HARRIS.  In addition, Plaintiff

22   HARRIS was well aware of Defendant NEU's prior history of engaging in

23   illicit sexual relations with other inmates.  On one occasion, Defendant NEU

24   bragged about taking Plaintiff HARRIS's cheeks while he stood behind

25   Plaintiff HARRIS.  Plaintiff HARRIS, who was in extreme fear, refused to

26   make any sudden movements for fear that Defendant NEU would, without

27   merit, charge him with assaulting an officer.  No physical contact occurred

28

because this particular incident stopped after Deputy Meinbress (Star #1947) accidently came upon them.  Defendant NEU, in an attempt to cover it up, acted like it was just another workout session with Plaintiff HARRIS.   Defendant NEU's reputation of sexually assaulting inmates, in conjunction with his proclamations about "taking cheeks" and the fact that he could force Plaintiff HARRIS to be alone with him at any given moment, led Plaintiff HARRIS to fear that he would soon be sexually assaulted by Defendant NEU.

37.     The first forced fight orchestrated by Defendant NEU occurred in early March 2015.  Defendant NEU had been telling Plaintiff HARRIS that he was Defendant NEU's "prize."

38.     Defendant NEU coerced Plaintiff HARRIS into fighting Plaintiff PALIKIKO-GARCIA by overtly threatening him with bodily harm and by using cheeseburgers, Officer Dining Room food (ODR food), and other sorts of food as incentives.  Plaintiff HARRIS was afraid that if he did not fight as he was ordered to do by Defendant NEU, he would suffer physical repercussions from Defendant NEU and his fellow sheriffs.

39.     Defendant NEU and Defendant CHIBA arranged for Plaintiff HARRIS and Plaintiff PALIKIKO-GARCIA to fight each other under their supervision.  The deputies staged the fights in a room past L-3 that had a blind spot and was not under video surveillance.

40.     Sometime in early March 2015, Defendant NEU told Plaintiff HARRIS that he would be fighting Plaintiff PALIKIKO-GARCIA.  After Plaintiff HARRIS objected, Defendant NEU said that the winner would get a cheeseburger.  Plaintiff HARRIS then objected again and Defendant NEU said that the winner would get ODR food.  Plaintiff HARRIS again refused. Defendant NEU left and returned about 30 minutes later.  This time, he said that if Plaintiff HARRIS did not fight Plaintiff PALIKIKO-GARCIA, he (Defendant NEU), would "fuck" Plaintiff HARRIS up himself or send him back

to the mainline.  Fearful of retribution by Defendant NEU and other members of the San Francisco Sheriff's Department, Plaintiff HARRIS begrudgingly agreed to fight Plaintiff PALIKIKO-GARCIA.

41.     A few minutes later, Plaintiff HARRIS and Plaintiff PALIKIKO-GARCIA were taken to a secluded area past L3.  Defendant NEU immediately instructed Plaintiff HARRIS and Plaintiff PALIKIKO-GARCIA to face each other.  Defendant NEU then told Plaintiff HARRIS and Plaintiff PALIKIKO-GARCIA that they were going to fight each other.  Defendant NEU went on to explain the rules of engagement.  Defendant NEU stated that they could not seek medical attention after the fight.  They were told not to strike each other in the face.  Defendant NEU further instructed the two inmates that, "If either of you gets injured, you are to say that you fell out of the bunk beds."  Plaintiff PALIKIKO-GARCIA protested his being forced to fight.  Defendant NEU then angrily threatened to "cuff and fuck" Plaintiff PALIKIKO-GARCIA up.  Defendant NEU then told Plaintiff PALIKIKO-GARCIA that he would put him on the mainline and send him to San Bruno.  Defendant NEU then offered a consolation promising the winner a cheeseburger.

42.     The ensuing fight between Plaintiff HARRIS and Plaintiff PALIKIKO-GARCIA lasted for approximately 3 minutes.  Plaintiff HARRIS and Plaintiff PALAKIKO-GARCIA started out grappling as Defendant NEU and Defendant CHIBA egged them on.  However, the fight quickly escalated with neither combatant holding back.  Neither combatant threw blows to the head, but they did throw elbows.  During the fight, Plaintiff HARRIS and Plaintiff PALAKIKO-GARCIA fell to the ground.  Plaintiff PALAKIKO-GARCIA put a winded and tired Plaintiff HARRIS in a headlock.  Plaintiff PALAKIKO-GARCIA's headlock forced Plaintiff HARRIS to "tap out", which ended the fight.  Defendant NEU then berated Plaintiff HARRIS saying, "Motherfucker, I don't like losing money!"  Defendant NEU then told Plaintiff

HARRIS and Plaintiff PALAKIKO-GARCIA that they would be fighting again in a week.

43.     Shortly thereafter, Defendant CHIBA escorted Plaintiff HARRIS and Plaintiff PALAKIKO-GARCIA back to the kitchen.  About an hour later, Defendant CHIBA then told Plaintiff HARRIS words to the effect of, "Listen fat boy.  If he uses that on you next time, this is how you get out."  Defendant CHIBA then demonstrated the escape move to Plaintiff HARRIS.  Later that day, Defendant NEU approached Plaintiff HARRIS and told him, "You gave up."  Defendant NEU then made Plaintiff HARRIS do pushups and told him that they would start training at 7 a.m. the next day in preparation for winning the next fight.

44.     The next day, Defendant NEU woke Plaintiff HARRIS up at 7 a.m. and made him go to the secluded area to work out.  Fearful of what Defendant NEU might do, Plaintiff HARRIS went with him to the secluded area and obeyed his commands.  Defendant NEU cajoled Plaintiff HARRIS exclaiming, "You're my prizefighter."  Defendant NEU made Plaintiff HARRIS do 200 pushups and a variety of other exercises.  The whole time, Defendant NEU kept talking about Plaintiff HARRIS winning the next fight.

45.     A few days after the first fight, Plaintiff HARRIS and Plaintiff PALIKIKO-GARCIA were both working in the kitchen at around 3:30 in the afternoon when Defendant NEU appeared and told Plaintiff HARRIS that he had a choice of going "a round with me" or having a rematch with Plaintiff PALIKIKO-GARCIA.  Plaintiff HARRIS objected, but his objection fell on deaf ears as Defendant NEU escorted him to the same area where the first fight had taken place.

46.     Defendant JONES and Defendant STAEHELY were present at the fight area.

47.     Plaintiff HARRIS and Plaintiff PALAKIKO-GARCIA were again instructed that, "anything goes", except for punching in the face.  Plaintiff HARRIS and Plaintiff PALAKIKO-GARCIA began to wrestle.  The fight was intense from the very beginning.  At one point, Plaintiff HARRIS punched Plaintiff PALIKIKO-GARCIA in the scrotum and Plaintiff PALIKIKO-GARCIA collapsed in pain, stopped fighting, and asked for a timeout.  Defendants NEU, JONES and STAEHELY denied Plaintiff PALIKIKO-GARCIA's request for a timeout and forced him to continue fighting.  The fight immediately resumed.  At some point, Plaintiff HARRIS was on top of Plaintiff PALIKIKO-GARCIA and Plaintiff PALIKIKO-GARCIA was struggling to breathe.  Two other deputies, Deputy Collins and Deputy Aquino, had run down the hall toward the fight.  Deputies Collins and Aquino retreated after Defendant JONES waved them off.

48.     The fight continued for a short time until Defendant NEU got scared and stopped it because he did not know if Deputies Collins and Aquino were going to "say something."  At the end of the second fight, Plaintiff PALAKIKO-GARCIA and Plaintiff HARRIS shook hands, which made Defendant NEU angry.  After the fight, Plaintiff PALIKIKO-GARCIA and Plaintiff HARRIS were sent back to the kitchen.  Plaintiff PALIKIKO-GARCIA told the other inmates about the injuries to his ribs, shoulder and groin.

49.     Plaintiff HARRIS is deathly afraid of Defendant NEU, Defendant JONES, Defendant STAEHELY and Defendant CHIBA as he believes that they are all validated gang members with far reaching powers.  Defendant NEU has proudly shown Plaintiff HARRIS his tattoo proclaiming himself a member of a gang called the "850 Mob".  Plaintiff HARRIS believes that Defendant NEU, Defendant JONES, Defendant STAEHELY and Defendant CHIBA, along with other members of the San Francisco Sheriff's Department, are members of the "850 Mob" and work in conjunction to achieve the illicit goals of said gang.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### *Keith Dwayne Richardson*

50.     The incident started in January 2015, and continued through March 2015. Plaintiff, KEITH DWAYNE RICHARDSON served dinner as a block worker in cell block G2 in San Francisco County Jail.  Plaintiff RICHARDSON served a white inmate food, and the inmate tossed the food all over the floor.  Defendant NEU attempted to force Plaintiff RICHARDSON into the white inmate's cell to make him fight the white inmate for tossing the food.  While doing this, Defendant NEU repeatedly referred to Plaintiff RICHARDSON as "nigger" and repeatedly threatened to do bodily harm to Plaintiff RICHARDSON.  Plaintiff RICHARDSON took Defendant Neu's racially charged threats very seriously and was scared for his life.  Ultimately, Plaintiff RICHARDSON used his better judgment and did not fight the white inmate.

51.     In February 2015, Plaintiff RICHARDSON was moved to Block L1, near where the fights were staged.  Sometime in March 2015, he witnessed Defendant NEU take inmate Plaintiff HARRIS out of his cell to fight.  Plaintiff PALIKIKO-GARCIA often confided in Plaintiff RICHARDSON that Defendant NEU would make him fight against his will.   On one occasion, Plaintiff PALIKIKO-GARCIA told Plaintiff RICHARDSON that his ribs were hurting. Plaintiff RICHARDSON told him to go to the nurse's office.  The deputies previously told Plaintiff PALIKIKO-GARCIA that if he could not get up and continue fighting, he would get transferred to another cell block.

52.     Plaintiff RICHARDSON often saw Defendant NEU carry around dice and cards. Beginning in early March of 2015, Defendant NEU made him gamble in games involving dice and cards.  Fearing retribution from Defendant NEU, Plaintiff RICHARDSON acquiesced and gambled with Defendant NEU. Some of the games Defendant NEU would force Plaintiff RICHARDSON to play included, but were not limited to: 21, dice, and a ping pong ball game.

Defendant NEU frequently made Plaintiff RICHARDSON gamble for material items, including food and clothes. Defendant NEU also made him gamble for television and work privileges.  Even when Plaintiff RICHARDSON won, Defendant NEU would often proceed as if he were the victor and keep the promised items.

53.     Plaintiff RICHARDSON witnessed numerous incidents regarding the jail fighting ring.  He saw Plaintiff PALIKIKO-GARCIA and Plaintiff HARRIS receiving hamburgers for fighting.  Defendants JONES, STAEHELY, CHIBA and NEU instructed the inmates to assault other inmates using methods such as: striking other inmates in the testicles, how to lock someone in a chokehold, and how to escape a chokehold if caught in one.  Moreover, Plaintiff RICHARDSON heard the deputies discuss how much money they lost staging the fights.

54.     Plaintiff RICHARDSON reported the unlawful conduct of the CITY AND COUNTY OF SAN FRANCISCO Deputies to Public Defender, Jeff Adachi.

55.     The actions and omissions of defendant CITY AND COUNTY OF SAN FRANCISCO Sheriff's department officers, was objectively unreasonable under the circumstances, without legal justification or other legal right, done under color of law, within the course and scope of their employment as law enforcement officers and/or public officials, and pursuant to unconstitutional customs, policies, and procedures.  The CITY AND COUNTY OF SAN FRANCISCO and MIRKARIMI were also responsible for Plaintiffs' injuries through its own acts and omissions, through their own deliberate indifference, by failing to properly and adequately investigate, train, supervise, monitor, instruct, and discipline its law enforcement officers and/or employees and agents, including the officers and officials described herein. Plaintiffs further allege that Defendant CITY AND COUNTY OF SAN FRANCISCO and

MIRKARIMI were aware of numerous incidents of unreasonable force, harassment, and coercion committed by deputies at San Francisco County Jail causing severe injury and/or death to arrestees and inmates there.  Plaintiff further alleges that Defendant COUNTY and MIRKARIMI, in spite of such notice, have failed to take remedial action to deter such acts by its deputy sheriffs at San Francisco County Jail.

**DAMAGES**

56.    As a result of the acts and omissions alleged, Plaintiffs suffered general damages including pain, fear, anxiety, and terror and related trauma in an amount according to proof.

57.    Plaintiffs sustained serious physical injuries, including permanent injuries, and have also incurred and may continue to incur medical treatment and related expenses in amounts to be determined according to proof.

58.    The acts and omissions of the individual defendants were sadistic malicious, wanton, oppressive and/or done with a conscious or reckless disregard for the rights of Plaintiffs.  Plaintiffs are therefore entitled to and aware of punitive and exemplary damages against these individual defendants in an amount according to proof.

59.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorneys' fees and/or costs pursuant to statute(s) in the event that he is the prevailing parties in this action under 42 U.S.C. §§§§ 1983, 1985-86 and 1988.  Plaintiffs are also entitled to punitive damages under 42 U.S.C. §§§§ 1983, 1985-86 and 1988.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983-Fourth Amendment)**
**(Against Defendants NEU, STAEHELY, JONES, CHIBA, and DOES**
**1-25)**

60.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 59 of this Complaint.

61.     Defendants jointly and severally violated Plaintiff PALIKIKO-GARCIA's clearly-established rights to be free from the use of unreasonable force, punishment, and punitive conditions of confinement as guaranteed and protected by the Fourth and Fourteenth Amendments to the United States Constitution.

62.     Under all the circumstances presented, an objectively reasonable officer would have known that: (1) the use of force upon the Plaintiff was excessive and could have led to serious injury or death; and (2) punishment and punitive conditions of confinement imposed upon the Plaintiff were not rationally related to any legitimate government objective, or were excessive in relation to that purpose.

63.     Defendants acted willfully, wantonly, maliciously, oppressively, and with conscious disregard to the rights of Plaintiff PALIKIKO-GARCIA.

64.     Defendants' misconduct was the moving force that caused Plaintiff PALIKIKO-GARCIA's injuries.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983-Eighth Amendment)**
**(Against Defendants NEU, STAEHELY, JONES, CHIBA, and DOES 1-25)**

65.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 64 of this Complaint.

66.     Defendants jointly and severally violated Plaintiff PALIKIKO-GARCIA's clearly established rights to be free from the use of unreasonable

19

force, punishment, and punitive conditions of confinement under the Eighth and Fourteenth Amendments to the United States Constitution.

67.     Under all the circumstances presented, an objectively reasonable officer would have known that: (1) the use of force upon the Plaintiff was excessive and unnecessary; and (2) punishment and punitive conditions of confinement imposed upon the Plaintiff were not rationally related to any legitimate government objective, or, were excessive in relation to that purpose.

68.     Defendants knew of, disregarded and therefore were deliberately indifferent to Plaintiff PALIKIKO-GARCIA's substantial risks of serious harm and need for medical care after Defendants' forced Plaintiff PALIKIKO-GARCIA to engage in this human cockfighting ring.

69.     Defendants' actions described herein were taken for the purpose to harm or to punish Plaintiff PALIKIKO-GARCIA rather than for any other legitimate government purpose.

70.     Defendants acted willfully, sadistically, maliciously, oppressively, and with conscious disregard to Plaintiff PALIKIKO-GARCIA's rights with the purpose of causing harm to Plaintiff PALIKIKO-GARCIA.

71.     Defendants' misconduct was the moving force that caused Plaintiff PALIKIKO-GARCIA's injuries.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
**(42 U.S.C. § 1983-Eighth Amendment)**
**(Against Defendants NEU, STAEHELY, JONES, CHIBA and DOES 1-25)**

72.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 71 of this Complaint.

73.     Defendants jointly and severally violated Plaintiff HARRIS's clearly established rights to be free from the use of unreasonable force,

punishment, and punitive conditions of confinement under the Eighth and Fourteenth Amendments to the United States Constitution.

74.     Under all the circumstances presented, an objectively reasonable officer would have known that: (1) the use of force upon the Plaintiff was excessive and unnecessary; and (2) punishment and punitive conditions of confinement imposed upon the Plaintiff were not rationally related to any legitimate government objective, or, were excessive in relation to that purpose.

75.     Defendants knew of, disregarded and therefore were deliberately indifferent to Plaintiff HARRIS's substantial risks of serious harm and need for medical care after Defendants forced Plaintiff HARRIS to engage in this human cockfighting ring.

76.     Defendants' actions described herein were taken for the purpose to harm or to punish Plaintiff HARRIS rather than for any other legitimate government purpose.

77.     Defendants acted willfully, sadistically, maliciously, oppressively, and with conscious disregard to Plaintiff HARRIS's rights with the purpose of causing harm to Plaintiff HARRIS.

78.     Defendants' misconduct was the moving force that caused Plaintiff HARRIS's injuries.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FOURTH CAUSE OF ACTION

**(42 U.S.C. § 1983-Fourth Amendment)**
**(Against Defendants NEU, STAEHELY, JONES, CHIBA, and DOES 1-25)**

79.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 78.

80.    Defendants jointly and severally violated Plaintiff HARRIS's clearly-established rights to be free from the use of unreasonable force, punishment, and punitive conditions of confinement as guaranteed and protected by the Fourth and Fourteenth Amendments to the United States Constitution.

81.    Under all the circumstances presented, an objectively reasonable officer would have known that : (1) the use of force upon the Plaintiff was excessive and could have led to serious injury or death; and (2) punishment and punitive conditions of confinement imposed upon the Plaintiff was not rationally related to any legitimate government objective, or were excessive in relation to that purpose.

82.    Defendants acted willfully, wantonly, maliciously, oppressively, and with conscious disregard to the rights of Plaintiff HARRIS.

83.    Defendants' misconduct was the moving force that caused Plaintiff HARRIS's injuries.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### FIFTH CAUSE OF ACTION
**(42 U.S.C. § 1983-Fourth Amendment)**
**(Against Defendant NEU, STAEHELY, JONES, CHIBA, and DOES 1-25)**

84.    Plaintiffs re-allege and incorporate by reference by paragraphs 1 through 83 of this Complaint.

85.    Defendants jointly and severally violated Plaintiff RICHARDSON's clearly-established rights to be free from the use of unreasonable force, punishment, and punitive conditions of confinement as guaranteed and protected by the Fourth and Fourteenth Amendments to the United States Constitution.

86.    Under all the circumstances presented, an objectively reasonable officer would have known that: (1) the use of force upon the Plaintiff was

excessive and could have led to serious injury or death; and (2) punishment and punitive conditions of confinement imposed upon the Plaintiff were not rationally related to any legitimate government objective, or were excessive in relation to that purpose.

87.    Defendants acted willfully, wantonly, maliciously, oppressively, and with conscious disregard to the rights of Plaintiff RICHARDSON.

88.    Defendants' misconduct was the moving force that caused Plaintiff RICHARDSON's injuries.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**(42 U.S.C. § 1983-Eighth Amendment)**
**(Against Defendant NEU, STAEHELY, JONES, CHIBA, and DOES 1-25)**

89.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 88 of this Complaint.

90.    Defendants jointly and severally violated Plaintiff RICHARDSON's clearly established rights to be free from the use of unreasonable force, punishment, and punitive conditions of confinement under the Eighth and Fourteenth Amendments to the United States Constitution.

91.    Under all the circumstances presented, an objectively reasonable officer would have known that: (1) the use of force upon the Plaintiff was excessive and unnecessary; and (2) punishment and punitive conditions of confinement imposed upon the Plaintiff were not rationally related to any legitimate government objective, or, were excessive in relation to that purpose.

92.    Defendants knew of, disregarded and therefore were deliberately indifferent to Plaintiff RICHARDSON's substantial risks of serious harm and need for medical care after Defendants attempted to force Plaintiff RICHARDSON to engage in this human cockfighting ring.

93.     Defendants' actions described herein were taken for the purpose to harm or to punish Plaintiff RICHARDSON rather than for any other legitimate government purpose.

94.     Defendants acted willfully, sadistically, maliciously, oppressively, and with conscious disregard to Plaintiff RICHARDSON's rights with the purpose of causing harm to Plaintiff RICHARDSON.

95.     Defendants' misconduct was the moving force that caused  Plaintiff RICHARDSON's injuries.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
### (42 U.S.C. § 1983-SUPERVISORY LIABILITY)
### (Against Defendant MIRKARIMI)

96.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 95 of this Complaint.

97.     Defendant MIRKARIMI's subordinates deprived Plaintiffs of their rights to be free from the use of unreasonable force, punishment, and punitive conditions of confinement under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

98.     Plaintiffs allege on information and belief that Defendant MIRKARIMI knew or reasonably should have known that their subordinates were engaging in these acts and that their conduct would deprive Plaintiffs of these rights, and, failed to prevent them from engaging in such conduct. Alternatively, Plaintiffs allege that Defendant MIRKARIMI acquiesced in Plaintiffs' Constitutional deprivations alleged herein or for conduct that showed a reckless or callous indifference to the rights of others.

99.     Defendant MIRKARIMI acted willfully, wantonly, maliciously, oppressively, and with conscious disregard to Plaintiffs' rights.

100.   Defendant MIRKARIMI's misconduct was the moving force that caused Plaintiffs' injuries.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**EIGHTH CAUSE OF ACTION**
**(42 U.S.C. § 1983-FAILURE TO DISCIPLINE, POLICIES/CUSTOMS, DELIBERATE INDIFFERENCE)**
**(Against the City and County of San Francisco)**

101.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 100 of this Complaint.

102.   Plaintiffs allege on information and belief that the CITY COUNTY OF SAN FRANCISCO has not disciplined the staff involved in any of the above-referenced incidents and other similar incidents, based on the customs, policies, and procedures described in this Complaint.

103.   The acts or omissions alleged herein regarding the use of excessive force, punishment, and punitive conditions of confinement in violation of the Fourth, Eighth, and Fourteenth Amendments were, upon information and belief, caused by the Sheriff's Department of the CITY AND COUNTY OF SAN FRANCISCO's (1) failure to discipline officers or (2) official policies, practices or customs or (3) deliberate indifference to the rights of inmates at the jail.

104.   Plaintiffs allege on information and belief that the CITY AND COUNTY OF SAN FRANCISCO and Defendant MIRKARIMI knew or should have known that the alleged acts and omissions would likely result in the Constitutional violations alleged herein.

105.   Upon information and belief, Plaintiffs allege that these acts and omissions were the moving force that caused Plaintiffs' injuries.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### NINTH CAUSE OF ACTION
#### (42 U.S.C. § 1983-RATIFICATION)
#### (Against the City and County of San Francisco)

106.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 105 of this Complaint.

107.   Defendant MIRKARIMI had final policymaking authority for the CITY AND COUNTY OF SAN FRANCISCO concerning the acts of jail staff, including all individuals identified herein.

108.   Plaintiffs allege on information and belief that Defendant MIRKARIMI ratified his subordinates' acts because he knew of and specifically approved of them, or, delegated his authority to review and approve of these use-of-force and related conditions-of-confinement incidents to others within his chain of command.

109.   Upon information and belief, Plaintiffs allege that these acts and omissions were the moving force that caused Plaintiffs' injuries.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### TENTH CAUSE OF ACTION
#### (Intentional Infliction of Emotional Distress)
#### (Against Defendants NEU, STAEHELY, JONES, CHIBA, and DOES 1-25)

110.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 109 of this Complaint.

111.   Defendants above-described conduct was extreme, unreasonable and outrageous.

112. In engaging in the above-described conduct, Defendants intentionally ignored or recklessly disregarded the foreseeable risk that Plaintiff PALIKIKO-GARCIA would suffer extreme emotional distress as a result of Defendants' conduct.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### ELEVENTH CAUSE OF ACTION
**(Intentional Infliction of Emotional Distress)**
**(Against Defendant NEU, STAEHELY, JONES, CHIBA and DOES 1-25)**

113. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 112 of this Complaint.

114. Defendant above-described conduct was extreme, unreasonable and outrageous.

115. In engaging in the above-described conduct, Defendants intentionally ignored or recklessly disregarded the foreseeable risk that Plaintiff HARRIS would suffer extreme emotional distress as a result of Defendants' conduct.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### TWELVETH CAUSE OF ACTION
**(Intentional Infliction of Emotional Distress)**
**(Against Defendants NEU, STAEHELY, JONES, CHIBA and DOES 1-25)**

119. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 118 of this Complaint.

120. Defendants' above-described conduct was extreme, unreasonable and outrageous.

121. In engaging in the above-described conduct, Defendants intentionally ignored or recklessly disregarded the foreseeable risk that

Plaintiff RICHARDSON would suffer extreme emotional distress as a result of Defendants' conduct.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## THIRTEENTH CAUSE OF ACTION
### (Assault And Battery)
### (Against Defendants NEU, STAEHELY, JONES, CHIBA and DOES 1-25)

122.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 121 of this complaint.

123.    Defendants repeatedly placed Plaintiff PALIKIKO-GARCIA in immediate fear of severe bodily harm. Defendants' conduct was neither privileged nor justified under statute or common law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FOURTEENTH CAUSE OF ACTION
### (Assault and Battery)
### (Against Defendants NEU, STAEHELY, JONES, CHIBA and DOES 1-25)

124.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 123 of this Complaint.

125.    Defendants repeatedly placed Plaintiff HARRIS in immediate fear of severe bodily harm.  Defendants' conduct was neither privileged nor justified under statute or common law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FIFTEENTH CAUSE OF ACTION
### (Assault and Battery)
### (Against Defendants NEU, STAEHELY, JONES, CHIBA and DOES 1-25)

126.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 125 of this Complaint.

28

127.    Defendants repeatedly placed Plaintiff RICHARDSON in immediate fear of severe bodily harm.  Defendants' conduct was neither privileged nor justified under statute or common law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### SIXTEENTH CAUSE OF ACTION
**(Negligence)**
**(Against All Defendants)**

128.    Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 127 of this Complaint.

129.    The present action is brought pursuant to section 820 and 815.2 of the California Government Code. Pursuant to section 820 of the California Government Code, as public employees, DOES 1-25 are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, Defendant Officers' were acting within the course and scope of their employment and/or agency with Defendants CITY AND COUNTY OF SAN FRANCISCO. As such DEFENDANTS CITY AND COUNTY OF SAN FRANCISCO are liable in respondeat superior for the injuries caused by the acts and omissions of Defendant officers, and DOES 1-25 pursuant to section 815.2 of the California Government Code.

130.    Defendants NEU, STAEHELY, JONES, CHIBA, and DOES 1 -25 negligently and without due care, and without cause harassed and forced inmates to fight each other. The treatment of the inmates was unjustified as there were no facts or circumstances, which warranted the actions of the Deputies.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### SEVENTEENTH CAUSE OF ACTION
**(*Monell*-42 U.S.C. § 1983)**
**(Against Defendant City and County of San Francisco)**

29

131.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 130 of this Complaint.

132.   As against Defendants CITY AND COUNTY OF SAN FRANCISCO, and/or DOES 1-25 and/or each of them, individually and/or in their capacities as official policy-maker(s) for CITY AND COUNTY OF SAN FRANCISCO, including the San Francisco Sheriff's Department.  Plaintiffs further allege that the acts and/or omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of Defendant CITY AND COUNTY OF SAN FRANCISCO and are tantamount to a custom, policy or repeated practice of condoning and tacityl encouraging the abuse of police authority, and disregard for the constitutional rights of citizens, such as Plaintiffs.

133.   Plaintiffs are informed and believe and thereon allege that the acts and/or omissions alleged herein are the proximate results of a custom, policy, pattern or practice of deliberate indifference by Defendants CITY AND COUNTY OF SAN FRANCISCO, NEU, STAEHELY, JONES, CHIBA, DOES 1-25 and.or each of them, to the repeated violations of the constitutional rights of citizens by San Francisco Sheriff's Department Deputies, which have included, but are not limited to, repeated acts of: forcing inmates to engage in a human cockfighting ring, providing false and/or misleading information, and/or engaging in similar acts of misconduct on a repeated basis and failure to

institute and enforce a consistent disciplinary policy and/or early warning system.

134.   Plaintiffs are further informed and believe and thereon allege that the acts and/or omissions alleged herein are the proximate result of a custom, policy, pattern or practice of deliberate indifference by Defendants CITY AND COUNTY OF SAN FRANCISCO, NEU, STAEHELY, JONES, CHIBA, DOES 1-25 and/or each of them, to the repeated violations of the constitutional rights of citizens by the San Francisco Sheriff's Department, which have included, but are not limited to, using excessive force on a repeated basis.

135.   Plaintiffs are further informed and believe and thereon allege that the damages sustained as alleged herein were the proximate result of customs, policies and/or practices which included, but were not limited to, the failure to adequately or appropriately hold officers accountable for their misconduct, the failure to properly and fairly investigate comoplaints about officers' misconduct, the failure to enact or adopt policies to ensure adequate and/or appropriate oversight of officers to prevent continuing violations of the rights of citizens.

136.   The aforementioned deliberate indifference, customs, policies or practices of Defendants CITY AND COUNTY OF SAN FRANCISCO, NEU, STAEHELY, JONES, CHIBA, DOES 1-25, and or each of them, resulted in the deprivation of the constitutional rights of Plaintiffs, including, but not limited to, the following

a.      the right to be free from unreasonable searches and/or seizures; and/or,

b.      the right to enjoy civil and statutory rights;

c.      said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

137.    As a result of the violation of their constitutional rights by Defendants CITY AND COUNTY OF SAN FRANCISCO, NEU, STAEHELY, JONES, CHIBA, and/or DOES 1-25 and/or each of them, Plaintiffs sustained the injuries and/or damages as alleged heretofore in this Complaint.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### EIGHTEENTH CAUSE OF ACTION
**(Violation of Civil Code § 51.7)**
**(Against All Defendants)**

138.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 137 of this Complaint.

139.    Plaintiffs are informed and believe and thereon allege that Defendants' conduct was motivated by racial prejudice against Plaintiffs. Plaintiffs are and were readily recognizable as Latino and African-American. Defendants' conduct constituted violations of Plaintiffs' rights pursuant to California Civil Code § 51.7.  Under § 51.7, individuals have a right to be free from violence, or intimidation by threat of violence committed against them because of race.

140.   Under the provisions of California Civil Code § 52(b), Defendants are liable fore each violation of California Civil Code § 51.7 for punitive damages, an additional $25,000.00 and for reasonable attorney's fees.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### JURY DEMAND

141.   Plaintiffs hereby demand a jury trial in this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs  pray for relief, as follows:

1. For general damages in a sum to be determined according to proof;

2. For special damages according to proof;

3. For an award of exemplary or punitive damages against the individual defendants;

4. For an award of attorney's fees and costs as permitted by law;

5. For such other and further relief as the Court may deem necessary and appropriate.


**LAW OFFICES OF JOHN BURRIS**


 Dated: March 16, 2016              */s/ John L. Burris*
                                    **John L. Burris, Esq.**
                                    Attorney for Plaintiffs

Dated:  March 16, 2016              */s/ Lateef H. Gray*
                                    **Lateef H. Gray, Esq.**
                                    Attorney for Plaintiffs

Dated:  March 16, 2016              */s/ James A. Cook*
                                    **JAMES A. COOK, Esq.**
                                    Attorney for Plaintiffs